**KOLLER LAW LLC**
David M. Koller, Esq. (90119)                                         *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIANNA FIGUEROA | : | |
| 3 Beaver Hill Road | : | |
| Horsham, PA 19044 | : | |
| Plaintiff, | : | Civil Action No. |
| | : | |
| v. | : | Complaint and Jury Demand |
| | : | |
| CHIPOTLE MEXICAN GRILL, INC. | : | |
| 1513 N Main Street, Building 500A | : | |
| Warrington, PA 18974 | : | |
| | : | |
| 610 Newport Center Drive, Suite 1300 | : | |
| Newport Beach, CA 92660 | : | |
| Defendant. | : | |

## CIVIL COMPLAINT

Plaintiff, Julianna Figueroa (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Chipotle Mexican Grill, Inc. (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff is an adult individual residing at the above captioned address.

2. Upon information and belief, Defendant is a chain of fast casual restaurants with a location on 1513 N Main Street, Building 500A, Warrington, PA 18974 and with a corporate headquarters located at 610 Newport Center Drive, Suite 1300, Newport Beach, CA 92660.

3. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

5. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

6. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

7. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

8. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§

1391(b)(1) and 1391(b)(2) because the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff exhausted her administrative remedies under the ADA and the PHRA.

10. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against Defendant.

11. The Complaint was assigned a Charge Number 530-2019-04549 and was dual filed with the Pennsylvania Human Relations Commission.

12. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Notice") relative to the Charge and that Notice is dated September 25, 2020. Plaintiff received the Notice by mail.

13. Plaintiff files the instant Complaint within ninety (90) days of her receipt of the Notice.

14. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

15. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

16. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

17. In the fall of 2017, Defendant hired Plaintiff as a Crew Member/Cashier.

18. Plaintiff was well-qualified for her position and maintained a satisfactory work performance rating at all times relevant hereto.

19. At the commencement of her employment, Plaintiff reported to Aliyah Munson ("Ms. Munson"), General Manager.

20. In February of 2018, Ms. Munson praised Plaintiff's work performance and informed Plaintiff that she intended to place her in Defendant's Manager Training program. As Plaintiff was a minor and a full time high school student at the time, Ms. Munson explained Defendant required its employees to be at least eighteen (18) years old to be eligible for the Management Training program, and therefore she would need to wait until Plaintiff's eighteen birthday in October of 2018.

21. During the course of her employment with Defendant, Plaintiff began to suffer from panic attacks. In connection therewith, Plaintiff advised Defendant that she suffers from Post-Traumatic Stress Disorder ("PTSD") and Bipolar Disorder I. Said medical conditions are disabilities within the meaning of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA") in that they substantially impair the Plaintiff's neurological functioning and one or more of her major life activities, including but not limited to, concentrating and thinking.

22. Thereafter, Defendant began reporting to Alexis Pasternak ("Ms. Pasternak"), General Manager and Ms. Pasternak became aware of Plaintiff's disabilities.

23. In November of 2018, shortly following her eighteenth birthday, Plaintiff inquired as to when she would be able to begin Defendant's Management Training Program. In response thereto, Ms. Pasternak retorted that she would not make Plaintiff a manager because she is "crazy" and "would burn the building down," directly referring to Plaintiff's disabilities in a demeaning and insulting manner.

24. Notably, Defendant permitted the two (2) other non-disabled high school student employees to enter the Management Training program when they each turned 18 years old.

25. On or about December 6, 2018, Plaintiff required a brief medical leave of absence due to her disabilities.

26. Upon learning that Plaintiff required a reasonable accommodation, Ms. Pasternak was condescending and questioned if Plaintiff "really need[ed] to even come back to work? If it's too stressful why come back?"

27. In relation thereto, Plaintiff registered a complaint of disability discrimination with Jose Gonzalez ("Mr. Gonzalez"), Area Manager, about Ms. Pasternak's discriminatory comments and of her attempt to interfere with Plaintiff returning to work.

28. On December 19, 2018, Plaintiff notified Ms. Pasternak via text message that she was medically able to return to work. However, Ms. Pasternak did not respond.

29. On December 21, 2018, Plaintiff again sent a text message to Ms. Pasternak that she was medically able to return to work. Ms. Pasternak merely responded that the schedule had already been made and that she would get back to Plaintiff later.

30. However, Ms. Pasternak did not get back to Plaintiff.

31. Instead, Ms. Pasternak purposely failed to inform Plaintiff that she had in fact been assigned a shift.

32. As a result thereof, on December 28, 2018 and January 1, 2019, it appeared as though Plaintiff had failed to attend her scheduled shifts although Ms. Pasternak had never informed her of the assignments. Furthermore, Plaintiff was deprived of the opportunity to earn compensation based on Ms. Pasternak's discriminatory delay in returning Plaintiff to work.

33. When Plaintiff complained to Ms. Pasternak about her not informing Plaintiff that she was on the schedule, Ms. Pasternak replied to Plaintiff that she needed to "relax."

34. Due to Ms. Pasternak's discriminatory and retaliatory treatment of Plaintiff upon her return from her medical leave of absence, Plaintiff registered another complaint recounting same with Mr. Gonzalez.

35. Plaintiff also informed Mr. Gonzalez that she needed the reasonable accommodation of working shorter shifts and not working the closing shift.

36. Shortly thereafter, Plaintiff began reporting to Raquel Swanson ("Ms. Swanson"), General Manager, and Ms. Swanson became aware of Plaintiff's disabilities and need for the aforesaid reasonable accommodations.

37. However, after initially not placing Plaintiff on the schedule for the first two (2) weeks, Ms. Swanson then flatly refused to grant Plaintiff's reasonable accommodation request and frequently scheduled Plaintiff to work long shifts and closing shifts, thereby exacerbating the severity of her medical conditions.

38. In addition, Ms. Swanson berated Plaintiff in front of her coworkers and customers, stating in an embarrassing fashion to customers that it was her "first day" and told her that she "[knew] nothing" and that she was "incompetent."

39. On March 25, 2019, in order to receive further treatment for her disabilities, Plaintiff was taken to the Lenape Crisis Center and then admitted to Horsham Clinic.

40. That same day, Plaintiff contacted Ms. Swanson that she was having a medical emergency, specifically suicidal ideations, and would not be able to report to work.

41. Ms. Swanson coldly responded to Plaintiff that she was "unreliable."

42. Due to the nature of Plaintiff's disabilities and treatment thereof, it was not possible for Plaintiff to engage in further communication with Ms. Swanson. As such, Plaintiff

informed Ms. Swanson that her mother would contact Defendant regarding her medical need for a leave of absence.

43. From March 25, 2019 through March 28, 2019, Plaintiff's mother repeatedly attempted to reach Ms. Swanson on Plaintiff's behalf but did not hear back from her.

44. On March 28, 2019, Plaintiff's mother finally heard from Ms. Swanson. However, Ms. Swanson refused to engage in the interactive process and simply stated that Plaintiff only had two (2) weeks to return to work or her position of employment would be terminated.

45. Moreover, on April 4, 2019, Plaintiff learned that Ms. Swanson stated to Plaintiff's coworkers that she was in a "mental hospital" and made other disparaging comments about her disabilities, treating Plaintiff's private medical information as a topic of workplace gossip.

46. As a result of Ms. Swanson's discriminatory and retaliatory actions, as aforesaid, Plaintiff registered complaints of disability discrimination with Trent Coffman, Regional Manager, and Marvin Jones, People Experience Partner, and further advised Defendant that Plaintiff required a medical leave of absence as treatment for her disabilities.

47. Notwithstanding said complaints, Defendant failed to take remedial action.

48. On May 1, 2019, Defendant terminated Plaintiff's position of employment allegedly due to "job abandonment" despite her repeated attempts to engage in the interactive process with respect to her medical need for a leave of absence.

49. Notably, Plaintiff was medically able to return to work less than one (1) week following Defendant's termination of her employment.

### COUNT I – DISABILITY DISCRIMINATION
### AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

50. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

51. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Plaintiff and its agents as being disabled.

52. Plaintiff was qualified to perform the job.

53. Plaintiff was subject to an adverse employment action, including, but not limited to, termination.

54. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

55. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

56. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

57. The purported reason for Defendant's decision is pretextual.

58. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

59. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

60. As a result of Defendant's unlawful disability discrimination, Plaintiff suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT II – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

61. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

62. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Plaintiff and its agents as being disabled.

63. Plaintiff was qualified to perform the job.

64. Plaintiff was subject to an adverse employment action, including, but not limited to, termination.

65. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

66. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

67. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

68. The purported reason for Defendant's decision is pretextual.

69. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

70. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

71. As a result of Defendant's unlawful disability discrimination, Plaintiff suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT III - FAILURE TO ACCOMMODATE
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

72. The foregoing paragraphs are incorporated herein by reference as though set forth in full.

73. Plaintiff is a qualified individual with a "disability" as that term is defined under the ADA because she has, or had at all time relevant hereto, a physical or mental impairment that substantially limits one or more major life activities, a record of such impairment, or being regarded as having such an impairment.

74. Plaintiff has disabilities that substantially limit major life activities, including but not limited to, concentrating and thinking, as well as the major bodily functions of neurological function.

75. At all relevant times, Respondent was aware of Plaintiff's disabilities.

76. Plaintiff required an accommodation of being provided for her schedule and with medical leaves of absences.

77. Plaintiff's requested accommodation was reasonable, and it would not impose an undue hardship on Defendant.

78. Defendant refused to grant Plaintiff an accommodation.

79. Defendant failed to engage in the interactive process with Plaintiff regarding her disability or any necessary accommodation.

80. Instead, Defendant terminated her employment.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV - FAILURE TO ACCOMMODATE
## PENNSYLVANIA HUMAN RELATIONS ACT

81. The foregoing paragraphs are incorporated herein by reference as though set forth in full.

82. Plaintiff is a qualified individual with a "disability" as that term is defined under the PHRA because she has, or had at all time relevant hereto, a physical or mental impairment that substantially limits one or more major life activities, a record of such impairment, or being regarded as having such an impairment.

83. Plaintiff has disabilities that substantially limit major life activities, including but not limited to, concentrating and thinking, as well as the major bodily functions of the brain and neurological function.

84. At all relevant times, Respondent was aware of Plaintiff's disabilities.

85. Plaintiff required an accommodation of being provided for her schedule and with medical leaves of absences.

86. Plaintiff's requested accommodation was reasonable, and it would not impose an undue hardship on Defendant.

87. Defendant refused to grant Plaintiff an accommodation.

88. Defendant failed to engage in the interactive process with Plaintiff regarding her disability or any necessary accommodation.

89. Instead, Defendant terminated her employment.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

90. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

91. Plaintiff engaged in activity protected by the ADA when she requested a reasonable accommodation and internally reported disability discrimination.

92. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

93. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

94. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

95. Plaintiff engaged in activity protected by the PHRA when she requested a reasonable accommodation and internally reported disability discrimination.

96. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

97. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Julianna Figueroa, requests that the Court grant her the following relief against Defendant:

(a) Compensatory damages;

(b)  Punitive damages;

(c)  Liquidated damages;

(d)  Emotional pain and suffering;

(e)  Reasonable attorneys' fees;

(f)  Recoverable costs;

(g)  Pre and post judgment interest;

(h)  An allowance to compensate for negative tax consequences;

(i)  A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and the PHRA.

(j)  Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)  Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)  Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: December 22, 2020  **By:**  */s/ David M. Koller*
David M. Koller, Esquire
Sarah R. Lavelle, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
slavelle@kollerlawfirm.com

*Counsel for Plaintiff*